```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

RICKEY POTTER,

                Plaintiff,              15-CV-6337

        -v-                             DECISION
                                            AND ORDER

CAROLYN W. COLVIN,
Acting Commissioner OF Social
Security,

                Defendant.
_____
```

Rickey Potter("plaintiff") brings this action under Titles II and XVI of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("the Commissioner" or "defendant") improperly denied his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "SSA").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is granted and defendant's cross-motion is denied.

## PROCEDURAL HISTORY

On October 12, 2011, plaintiff filed applications for DIB and SSI alleging disability as of October 1, 2010. Administrative Transcript ("T.") 129-141.  Following an initial denial of those applications, plaintiff and vocational expert ("VE") Suzanne Roache

testified at a video hearing, held at plaintiff's request, on January 6, 2014 before administrative law judge ("ALJ") Mary Withum. T. 31-73. The ALJ issued an unfavorable decision on January 30, 2014, and a request for review was denied by the Appeals Council on April 30, 2015. T. 1-6, 10-28.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff met the insured status requirements of the SSA through September 30, 2011; (2) plaintiff had not engaged in substantial gainful activity since October 1, 2010; (3) his cervical spine degenerative disc disease, right shoulder tendinitis, depressive disorder, and alleged learning disorder were severe impairments; (3) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926); and (4) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: never climb ladders, ropes or scaffolds or work around unprotected heights; frequent overhead reaching and handling with right dominant arm; perform only simple, routine, repetitive tasks that can be learned by demonstration only. T. 15-17. The ALJ further found that plaintiff was unable to perform any

past relevant work and, at 43 years old on his alleged disability onset date, plaintiff fit the definition of a younger individual 18 to 49 years old. T. 22.

**DISCUSSION**

I.  General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions

3

are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

At the time of his hearing, plaintiff lived with his fiancé who was receiving DIB and SSI due to a "[d]eteriorating disc in her back." T. 33. Plaintiff had an eighth-grade education and testified that he could do "[h]ardly any" reading or writing apart from his name. T. 35-36. Plaintiff's work history consisted of CNC machine operator for two years, forklift operator for six months, and dishwasher. Plaintiff stated that he unable to work due to pain and limited range of motion in his neck and back, numbness in his hands and right knee pain. He was able to stand for only 30 minutes at a time and walk 500 feet, which would take him "[p]robably 20 minutes or so," without stopping to sit down. He had difficulty sleeping due to being "constantly in pain." T. 48. Plaintiff was able to take care of his personal hygiene but began using a shower seat after falling in the shower several times. He had difficulty using his hands to button and zipper his clothing and carry or hold most objects. Plaintiff had been taking medication for his depression but stopped about a month prior to the hearing. Plaintiff received special education services throughout school.

The VE testified, in response to the ALJ's hypothetical question based on an individual of claimant's age, education, and work history who was limited to light work with no work on ladders,

ropes, ropes, scaffolds, or from unprotected heights, frequent overhead reaching and frequent handing with his right upper extremity, and only simple, routine, repetitive tasks taught by demonstration only, that such a person could perform the light, unskilled jobs of an advertising material distributor, of which there exist 43,943 jobs nationally, a cafeteria attendant, of which there exist 57,673 jobs nationally, and a ticket taker, of which there exist 13,486 jobs nationally. T. 60-63. The VE further testified that such an individual with the same limitations would be able to do the sedentary work of a document preparer, of which there exist 14,904 jobs nationally and a table work, of which there exist 21,816 jobs nationally. The VE further testified that if such an individual was off task 15 percent or more of the work day, all jobs would be eliminated.

II. The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence in the Record.

**The ALJ's RFC assessment.**

Plaintiff contends that remand is warranted because the ALJ failed to properly weigh the medical opinion of consultative examiner Dr. Sandra Boehlert, M.D. or identify any medical basis for her RFC assessment. Plaintiff's memorandum of law, p. 8-15. Plaintiff further contends that the ALJ erred at Step Five by posing an inadequate hypothetical question to the VE that did not reflect his limitations. Plaintiff's memorandum of law, p. 18-21. Defendant responds that the RFC determination properly accommodated

5

all of plaintiff's limitations. Defendant's memorandum of law, p. 13-17.

"It is well-settled that 'the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A. 1996), citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). In this case, after setting forth plaintiff's RFC, the ALJ summarized most of the medical evidence in the record, including treatment notes from plaintiff's medical providers from 2001 to 2012. T. 582-591. Here, the ALJ detailed plaintiff's limited treatment history and discussed how the medical evidence to which she relied upon supported the conclusion that plaintiff could perform light work with the limitations referenced herein.

Consultative internet Dr. Sandra Boehlert examined plaintiff on January 30, 2012 and diagnosed him with right shoulder pain with a marked limitation in range of motion, and cervical spine degenerative disc disease with a history of right cervical radiculopathy. Dr. Boehlert opined that plaintiff had moderate limitations using his right hand for grip or exertion, repetitive bending and twisting of the cervical spine, walking on ladders or uneven surfaces and for heavy ambulation and moderate to marked

6

limitations in reaching overhead with the right arm. Her physical examination revealed no acute distress, normal gait and stance, no assistive devices for ambulation, no help changing for the examination or getting on and off the examination table, and no difficulty rising from his chair. Plaintiff had difficulty walking on his toes but could squat fully when using one hand to assist. He had a limited range of motion in his cervical and lumbar spine and shoulders but unremarkable right shoulder x-ray results and a negative straight leg raise test. Full range of motion was observed in his elbows, forearms, wrists, hips, knees, and ankles. He was neurologically intact with full strength in all extremities and intact hand and finger dexterity with full grip strength on the left and 4-of-5 grip strength on the right.

In the ALJ's decision, she noted that "[w]hile Dr. Boehlert opined that [plaintiff] has limited use of his right arm," the doctor "also felt that [he] might have improvement with proper treatment." T. 18-19. She further noted that a consultative psychological examination performed by Dr. Finnity on the same day revealed normal motor function. The record reveals, as noted by the ALJ, that plaintiff cancelled his next appointment and did not seek treatment for the following six months. Although defendant did obtain a neck evaluation in August 2012, he was discharged from treatment in October 2012 and did not follow up on his apparent decision to proceed with surgery. The ALJ notes that plaintiff's

next treatment was a December 2012 visit to the emergency room for neck pain after falling. A CT scan of his cervical spine revealed degenerative disc disease. When plaintiff returned to the emergency room in January 2013 for back pain after another fall, the examination revealed normal range of motion in his arms and non-tender, pain free range of motion in his neck. T. 310.

The ALJ notes that plaintiff again did not seek medical treatment for another four months. Treatment notes reveal that plaintiff was subsequently evaluated for neck pain May 20, 2013, and he exhibited a reduced range of motion with tenderness in the cervical spine. By June 13, 2013, however, the record reveals that plaintiff had declined to proceed with surgery because "the odds aren't good" and that he exhibited normal range of motion in his shoulders and normal arm strength with cervical spine tenderness and paraspinal muscle spasm. T. 356-357. Plaintiff reported that he tried physical therapy and "conservative management with no relief." T. 357.

Based on a comprehensive review of plaintiff's medical history and the record evidence as a whole, the Court finds that the ALJ's decision is based on substantial evidence. The Court finds no merit to plaintiff's contention that the ALJ erred at Step Five by posing an inadequate hypothetical question to the VE.

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed must reflect all of the

plaintiff's impairments that are supported by medical evidence in the record. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981); *see also Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). If a hypothetical question does not include all of a plaintiff's limitations and restrictions, the VE's response cannot provide substantial evidence to support a conclusion of no disability. *See Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. 1996).

Here, the ALJ correctly assessed Plaintiff's RFC to do light work with certain limitations, which accurately reflect plaintiff's function limitations as they are set forth by substantial medical evidence contained in the record. This evidence, as detailed above, includes the examination results and medical opinion of Dr. Boehlert concerning plaintiff's physical limitations, the opinion of Dr. Finnity concerning extent of his intellectual impairments, and the opinion of reviewing state agency psychologist Dr. T. Harding.

During a January 30, 2012 examination of plaintiff, consultative psychologist Dr. Kavitha Finnity diagnosed him with moderate major depressive disorder and learning disorder by history. *See* T. 230-232. Dr. Finnity opined that plaintiff could perform complex tasks with supervision, learn new tasks, make appropriate decisions, follow and understand simple directions and perform simple tasks and maintain a regular schedule. Dr. Finnity

9

found that plaintiff's attention and concentration was mildly impaired and he was able to do counting and calculations but had difficulty with serial threes. His recent and remote memory skills were impaired and his cognitive function was below average to borderline with a "somewhat limited" general fund of information. T. 231. Dr. Finnity opined that plaintiff had some difficulty relating with others and dealing with stress and she assessed his prognosis as fair, with improvement expected with treatment.

On February 7, 2012, Dr. Harding assessed mild limitations in plaintiff's activities of daily living and social functioning and moderate difficulties in concentration, persistence, or pace, and he found no episodes of decompensation. Dr. Harding opined that plaintiff had moderate limitations in only one area: understanding, remembering and carrying out detailed
instructions. Dr. Harding opined that plaintiff could understand and carry out simple instructions, use appropriate judgment to make simple work-related decisions, respond appropriately to supervision and coworkers, and deal with changes in a routine work setting (Tr. 247). Plaintiff was further able to effectively, appropriately, and independently perform his activities of daily living on a sustained basis.

Based on the record evidence, there is no support for plaintiff's claim that the RFC assessment failed to incorporate plaintiff's intellectual and educational limitations. The RFC

10

assessment limits plaintiff to simple, routine, repetitive tasks that can be learned by demonstration only. Therefore, the Court concludes that this limitation, and the RFC assessment as a whole, is supported by substantial record evidence.

The Court has also considered plaintiff's final contention concerning plaintiff's credibility assessment by the ALJ (plaintiff's memorandum of law, p. 22-25) and finds that it has no merit. Because plaintiff's reported symptoms suggest an even greater restriction of function than is shown by the record evidence, the ALJ was entitled to consider factors such as his daily activities, the location, duration, frequency and intensity of his pain, any aggravating factors, the type, dosage, effectiveness, and adverse side-effects of medication, and any treatment or other measures used for pain relief. *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling ("SSR 96-7p"), (July 2, 1996), 1996 WL 374186, at *7. The ALJ's decision incorporates a review of plaintiff's testimony, also noting the significant gaps in treatment and periodically waning symptoms. Thus, the Court finds no indication that the ALJ abused her discretion in assessing plaintiff's credibility. *See Judelsohn v. Astrue*, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012); *Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012).

III. CONCLUSION

Plaintiff's motion for judgment on the pleadings (Docket No. 7) is denied, and defendant's cross-motion for judgment on the pleadings (Docket No. 8) is granted. The ALJ's decision denying plaintiff's claims for SSI and DIB is supported by the substantial evidence in the record. Consequently, the complaint is dismissed in its entirety with prejudice. The Clerk is directed to close the case.

ALL OF THE ABOVE IS SO ORDERED.

    S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
      September 29, 2016